13 F.3d 405
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Ralph M. LEPISCOPO, Petitioner-Appellant,
v.
Robert J. TANSY, Respondent-Appellee.
 No. 92-2298.
 United States Court of Appeals, Tenth Circuit.
 Dec. 16, 1993.
 
 ORDER AND JUDGMENT[1]
 Before KELLY, GODBOLD[2] and BARRETT, Circuit Judges.
 
 
 1
 Petitioner-appellant Ralph Lepiscopo appeals from the district court's order dismissing his habeas corpus petition under 28 U.S.C. 2254 and denying him a certificate of probable cause to appeal. We have jurisdiction under 28 U.S.C. 1291, 2253. We grant a certificate of probable cause, reverse and remand.
 
 Background
 
 2
 Mr. Lepiscopo entered into a plea agreement on January 30, 1986, pleading guilty to one of two charges of attempted escape from the New Mexico State Penitentiary in July 1984. Pursuant to the agreement, Mr. Lepiscopo agreed to be confined in maximum security pending the erection of a perimeter fence around the North Facility of the penitentiary where he would then be released into the general prison population. This fence was never constructed.
 
 
 3
 Subsequently, Mr. Lepiscopo filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. 2254 challenging his conviction for the attempted escapes based on the state's failure to comply with the plea agreement. On May 23, 1990, the district court entered an order granting the writ and vacating the underlying conviction and sentence conditioned on the state's failure to give Mr. Lepiscopo a new trial within six months of the order. The state did not attempt to prosecute Mr. Lepiscopo within the requisite six months and continued to confine him involuntarily in maximum security. Mr. Lepiscopo specifically challenges, on due process grounds, the legality of his maximum security confinement for the time period beginning with the entry of the district court's order on May 23, 1990, and ending with his filing of this petition for a writ of habeas corpus on December 5, 1990. He further contends that this wrongful confinement deprived him of the ability to accumulate as many good time credits as an inmate in the general prison population and he seeks these credits as redress.
 
 Discussion
 I. Mootness
 
 4
 At the outset we address the state's motion to dismiss for lack of justiciability due to mootness. The state's argument is twofold: (1) Mr. Lepiscopo could have received just as many good time credits in maximum security as he would have in the general population and therefore has no redress; (2) recent amendments to the Duran decree, as well as subsequent escape attempts by Mr. Lepiscopo, now sanction the state's alleged misconduct and his continued maximum security confinement, making future infringement of his rights unlikely. We address each of these arguments in turn.
 
 
 5
 The record is unclear and the trial court made no findings as to whether Mr. Lepiscopo could have earned more good time credits in the general population than in maximum security. For this reason, and for the reasons set forth below, we remand to the district court for further proceedings on this issue. Should the district court find that Mr. Lepiscopo could have earned more good time credits had he been confined in the general population during the period in question, the district court shall order that the good time credits be restored. Should the district court find otherwise, it shall deny the writ.
 
 
 6
 We find unpersuasive the state's argument that the amended Duran decree would allow the state to confine Mr. Lepiscopo, or any other prisoner, in maximum security based on overt acts that occurred nearly four and one-half years prior to an involuntary maximum security confinement. Under the original Duran decree, in order for the state to continue involuntary maximum security confinement beyond 60 days based on acts of escape, the state must point to some act that occurred within the previous six months. III R. ex. 8 (Duran v. Apodaca, CIV-77-721-C, ex. G, 1/2 9(d) (D.N.M.1980) [hereinafter Duran ]. The amended decree permits continued confinement beyond 30 days, I R. doc. 33, att. A (Amended Duran, ex. G, 1/2 8), "if the classification process includes documentation of reasons justifying a good faith belief that reintegration into the general population ... may present a threat to the security of the institution." Id. (Amended Duran, ex. G, 1/2 9). A "threat to the security of the institution" under amended Duran "means any behavior which causes or is reasonably likely to cause acts of violence, escape ... [etc.]." Id. (Amended Duran, ex. G, 1/2 2). It is unreasonable to interpret these amendments to allow an attempted escape that occurred four and one-half years ago to provide an adequate foundation for a good faith belief that an attempt to escape by the same prisoner is reasonably likely to occur in the near future. Thus, the absence of a six-month limitation on relevant conduct in the amended decree does nothing to help the state here. If Mr. Lepiscopo's confinement was illegal in 1990 it would be illegal today. For these reasons we deny respondent's motion to dismiss and proceed to the merits.
 
 II. Due Process
 
 7
 The issue of whether Mr. Lepiscopo was confined in maximum security without due process of law involves mixed questions of law and fact and is subject to de novo review. Nichols v. Sullivan, 867 F.2d 1250, 1253 (10th Cir.), cert. denied, 490 U.S. 1112 (1989).
 
 
 8
 Generally, the transfer of a prison inmate from one state facility to another does not implicate the Due Process Clause of the Fourteenth Amendment, even if the transfer results in substantial detrimental change to the prisoner's living conditions. Meachum v. Fano, 427 U.S. 215, 224-25 (1976). Once the state places constraints on the discretion of prison officials to transfer inmates, however, the state creates a protected liberty interest of the inmate in remaining in the general population of the prison to which he was originally confined. Olim v. Wakinekona, 461 U.S. 238, 249 (1983). Thus, the state action involved in the transfer of an inmate enjoying such a liberty interest must be rationally supported by a "modicum of evidence" to comport with due process. Superintendent v. Hill, 472 U.S. 445, 455 (1985).
 
 
 9
 The confinement of state prisoners in maximum security in New Mexico is regulated by the Duran consent decree of July 14, 1980. Duran v. Apodaca, No. CIV-77-721-C (D.N.M.1980). A consent decree entered into by a state is equivalent to state law for purposes of our analysis. Smith v. Sumner, 994 F.2d 1401, 1406 (9th Cir.1993); Rodi v. Ventetuolo, 941 F.2d 22, 27 (1st Cir.1991). Under this decree, prisoners may be confined to maximum security for seven reasons: (1) disciplinary segregation; (2) prehearing detention; (3) pending investigation; (4) secure housing in connection with a capital offense; (5) threat to the security of the institution; (6) involuntary protective custody; (7) voluntary protective custody. Duran, ex. G. These categories and their attendant procedures sufficiently constrain the discretion of New Mexico state prison officials in the area of inmate classification and transfer such that they create a protected liberty interest in New Mexico state prison inmates.
 
 
 10
 Here, because the plea agreement pursuant to which Mr. Lepiscopo was voluntarily classified as maximum security had been vacated on May 23, 1990, his subsequent confinement therein was involuntary. It was then incumbent upon the state to reclassify Mr. Lepiscopo under one of the remaining six Duran categories if his continued maximum security confinement was to be legal. Based on the character of Mr. Lepiscopo's past conduct, the only possible category under which he might have been classified was "threat to the security of the institution."[3] However, Mr. Lepiscopo's threat to prison security occurred nearly four and one-half years prior to this date and thus was stale for purposes of Duran. See III R. ex. 8 (Duran, ex. G, 1/2 9(d)).
 
 
 11
 Indeed, the state admits that Mr. Lepiscopo's continued detention in maximum security after May 23, 1990, was in violation of Duran. III R. ex. 14. However, the state attempts to justify this detention based on his history of escapes, reasoning that the administration of the facility would be benefitted by his continued maximum security confinement. Id.; see II R. at 41-42. In essence, the state has been operating under the erroneous assumption that it could unilaterally amend the Duran decree by creating an "eighth category" encompassing those cases which fell outside Duran but nonetheless, in its opinion, warranted continued maximum security confinement. II R. at 41-42. This is a simple, yet flagrant, violation of the law.
 
 
 12
 The Duran decree itself provides for amendment procedures by which the state may change classification procedures in light of new or unforeseen administrative developments. III R. ex. 8 (Duran, Agreement, 1/2 6). Instead of following these procedures, the state unilaterally changed the classification scheme within what it felt to be "the spirit" of the decree. See Aplt. Add. at 44-45. Matters of procedure bearing on constitutionally protected interests must be strictly followed. Here, the state does not even suggest that it acted within the procedural constraints set forth in Duran. The state's unreasonable failure to act within these constraints placed its conduct beyond the Constitution and thus deprived Mr. Lepiscopo of his liberty without due process of law.
 
 
 13
 We also note that the state further violated Mr. Lepiscopo's right to due process by providing him with inadequate notices of his monthly hearings and inadequate statements of reasons for his continued confinement in maximum security. Pro forma monthly reviews of prisoner classification were contemplated by neither the Duran decree, see Duran, ex. G, 1/2 8,9, nor the Due Process Clause of the Constitution. An adequately detailed notice must be provided prisoners in advance of their classification hearings to ensure that their right to be heard be meaningful through sufficient preparation. Duran, ex. G, 1/2 5; see Mathews v. Eldridge, 424 U.S. 319, 333 (1976). The deliberation of the committee, and the report as its product, must reflect recent justifications for continued confinement and not merely function as a rubber stamp for past decisions. See Kelly v. Brewer, 525 F.2d 394, 400 (8th Cir.1975).
 
 
 14
 We GRANT Mr. Lepiscopo a certificate of probable cause, REVERSE the district court's order dismissing Mr. Lepiscopo's petition and REMAND for findings consistent with this order and judgment. All other pending motions are DENIED.
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3
 
 
 [2]
 The Honorable John C. Godbold, Senior United States Circuit Judge for the United States Court of Appeals-Eleventh Circuit, sitting by designation
 
 
 [3]
 A "threat to the security of the institution" is defined by the Duran decree to include "escape or attempted escape." II R. ex. 8 (Duran v. Apodaca, No. CIV-77-721-C, ex. G, 1/2 2 (D.N.M.1980))