24 F.3d 246
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Michael R. HANLINE, Petitioner-Appellant,
v.
Robert G. BORG, Respondent-Appellee.
 No. 93-15979.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 12, 1994.*
Decided April 29, 1994.
 
 Before: SCHROEDER, D.W. NELSON, and CANBY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Petitioner Michael R. Hanline ("Hanline"), a prisoner of the State of California acting pro se and in forma pauperis, appeals the district court's denial of his petition for a writ of habeas corpus. We have jurisdiction pursuant to 28 U.S.C. Sec. 2253.
 
 
 3
 Hanline challenges a disciplinary proceeding held in response to a charge that he attempted to escape from custody while temporarily housed at a medical facility where he had been taken for treatment. He claims that as a result of the proceeding he lost 150 days of sentence reduction credits, and was assigned to more restrictive custody. Hanline seeks to have the credits restored and his prison record expunged.
 
 
 4
 Noting that Hanline is serving a life sentence without possibility of parole, the district court found that restoration of Hanline's credits would have no effect on the length of his sentence. On this basis, the district court held that habeas corpus relief is unavailable. Although we agree with the district court that habeas corpus relief is unavailable insofar as Hanline is seeking restoration of the credits, we reverse the denial of the writ on the ground that Hanline's contention that he was assigned to more restrictive custody states a claim cognizable under habeas corpus. Accordingly, we remand the case to the district court for a determination of whether Hanline in fact was subjected to more restrictive custody, and, if so, whether he received the process he was due.
 
 STANDARD OF REVIEW
 
 5
 We review de novo the district court's dismissal of a petition for writ of habeas corpus. Adams v. Peterson, 968 F.2d 835, 843 (9th Cir.1992) (en banc), cert. denied, 113 S.Ct. 1818 (1993). We defer to the factual findings of a prison disciplinary body unless those findings are clearly without support. See Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir.1989).
 
 DISCUSSION
 Loss of Credits
 
 6
 Habeas corpus jurisdiction is available for a prisoner's claim that he has been denied good time credits without due process of law, and for expungement of a disciplinary record if expungement is likely to accelerate the prisoner's eligibility for parole. See Bostic, 884 F.2d at 1269; see also Preiser v. Rodriquez, 411 U.S. 475, 486 (1973) (noting that habeas corpus serves to provide a forum for prisoners who claim that they are "being unlawfully subjected to physical restraint").
 
 
 7
 Here, however, Hanline concedes that he is serving a life sentence without possibility of parole. Because he is not eligible for parole, neither the loss of credits nor the expungement of his prison disciplinary record can have any direct effect on the duration of his incarceration. "In California, a sentence of life imprisonment without the possibility of parole precludes any possibility of release from prison except upon commutation by the Governor." People v. Whitt, 51 Cal.3d 620, 656-57 (1990), cert. denied, 111 S.Ct. 2816 (1991). Although a federal determination that the disciplinary process was constitutionally defective conceivably could play a role in an eventual decision by the Governor to commute Hanline's life sentence, this possibility is entirely speculative. Cf., e.g., Sisk v. CSO Branch, 974 F.2d 116, 118 (9th Cir.1992) (noting that a civil rights action is the appropriate means of challenging disciplinary actions by prison authorities where the prisoner's ultimate release depends on commutation of his or her sentence by the Governor and where the duration of confinement thus can only be affected by the State itself).
 
 
 8
 Accordingly, we agree with the district court that, to the extent Hanline seeks habeas corpus relief to have his sentence reduction credits restored and to have his disciplinary record expunged, the writ must be dismissed.
 
 Restrictive Incarceration
 
 9
 In his habeas corpus petition before the district court, Hanline also alleged that the acts of the prison authorities violated his Fourteenth Amendment due process rights. Construing Hanline's pro se petition liberally, we interpret this vague allegation as incorporating the more specific allegation he made in his supplemental filings that his confinement classification was increased from "Medium A" to "Close A" as a result of the disciplinary proceeding. In essence, Hanline's claim is that, by being subjected to more restrictive custody, he was deprived of a liberty interest protected by the Due Process Clause of the Fourteenth Amendment.
 
 
 10
 "Liberty interests protected by the Fourteenth Amendment may arise from two sources--the Due Process Clause itself and the laws of the states." Hewitt v. Helms, 459 U.S. 460, 466-67 (1983). Although the Due Process Clause itself does not give rise to a liberty interest in remaining in a general prison cell, id. at 466, this court previously has determined that California prison regulations create a liberty interest in not being subjected to arbitrary disciplinary segregation, Toussaint v. McCarthy, 801 F.2d 1080, 1097-98 (9th Cir.1986) (construing 15 Cal.Admin.Code Secs. 3335, 3336, 3339(a)), cert. denied, 481 U.S. 1069 (1981). The precise provisions of the California regulations implicated by Hanline's claim differ from those at issue in Toussaint, but we conclude that the former, like the latter, sufficiently constrain the discretion of prison authorities so as to create a liberty interest.
 
 
 11
 "[A] state creates a liberty interest by both (1) establishing 'substantive predicates to govern official decisionmaking,' and (2) using 'explicitly mandatory language, i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow.' " Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir.1993) (citations omitted). The Rules and Regulations of the Director of Corrections contain mandatory provisions requiring the prison to provide notice and a hearing to an inmate accused of a rules violation, set forth detailed requirements for the hearing process itself, and carefully delineate the range of punishments for the different infraction categories. See 15 Cal.Admin.Code Secs. 3310 et seq. (1987). Specifically, "realignment of prescribed custody classification," id., Sec. 3315(b)(5)(B), the punishment challenged by Hanline, can be imposed only after a determination that the prisoner's offense falls within one of the enumerated "serious rule violation" categories, see id., Sec. 3313, and only after the mandatory hearing requirements have been satisfied, see id., Sec. 3320. Accordingly, we conclude that Hanline's allegations suffice to state a claim under the Fourteenth Amendment.
 
 
 12
 Properly construed, Hanline's claim is thus cognizable under federal habeas corpus jurisdiction. See Bostic, 884 F.2d at 1268 ("Habeas corpus jurisdiction is ... available for a prisoner's claims that he has been subjected to greater restrictions of his liberty, such as disciplinary segregation, without due process of law."); Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir.1987) (assuming that a habeas petitioner had a protected liberty interest in not being subjected to disciplinary segregation), cert. denied, 487 U.S. 1207 (1988); see also Graham v. Broglin, 922 F.2d 379, 381 (7th Cir.1991) (noting that habeas corpus is the appropriate remedy where the prisoner is not merely transferred to another location, but is subjected to a "quantum change in the level of custody"); Rand v. Perales, 737 F.2d 257, 262 (2d Cir.1984) (noting that habeas is an "available remedy for a challenge to the lawfulness of restrictive or otherwise more arduous confinement within prison custody").
 
 
 13
 Although Hanline states a claim for habeas corpus relief, the State contests the factual predicate underlying his claim. The State claims that although Hanline's custody status changed after the disciplinary proceeding, this change was a natural consequence of his return to the Folsom State Prison from the medical facility where he had been housed during his treatment, and thus had nothing to do with the disciplinary proceeding. The factual record is ambiguous.
 
 
 14
 In his declaration, Mark Sheperd, the State's corrections expert, stated that, at the time Hanline was transferred from Folsom State Prison to the medical facility, Hanline's custody level was "Medium A," and that, upon return to Folsom, he was classified under the more restrictive "Close A" status. The expert described the consequences of "Close A" custody as including "housing ... in cells in areas designated and maintained for higher security needs," as well as a complete prohibition on evening activities. The expert further stated, however, that the criteria for determining custody status had changed during the time that Hanline was at the medical facility, and that classification personnel recalculated Hanline's status based on his sentence of life imprisonment without possibility of parole "as well as [his] recent escape attempt from North Bay Medical Center." Because this statement is ambiguous (it could be interpreted as a concession that the disciplinary proceeding played some role in the change in status, but also could be read as an assertion that either the original sentence or the escape attempt would have sufficed to produce the new "Close A" classification), further fact-finding is necessary to resolve the issue. At a minimum, Hanline has raised a triable issue of fact as to whether he was subjected to more restrictive custody because of his disciplinary infraction, and we remand for further proceedings on that issue.
 
 
 15
 We note that Hanline raises two separate constitutional challenges. His first claim is that the prison authorities effectively convicted him of a state law criminal offense, far exceeding the scope of their authority; his second claim is that he did not receive due process at his hearing.
 
 
 16
 Hanline's first contention is without merit. Hanline was not subjected to the penalties available under the state criminal code for the crime of escape. He was disciplined under Rule 3000 of the Rules and Regulations of the Director of Corrections, which makes various crimes, including attempted escape, disciplinary infractions. It was well within the jurisdiction of the prison authorities to impose discipline for the infraction of attempted escape.
 
 
 17
 Even if we interpret Hanline's allegations to raise a claim of due process notice, a claim that is implicit in his contention that nothing in Rule 3000 suggested that a prisoner would be punished under the Rule if he were not first convicted of the underlying state law offense, his claim must fail. Significantly, whether or not Rule 3000 gave Hanline sufficient notice that he could be disciplined by the prison for escape, Prison Rule 3315 put Hanline on notice that he could be disciplined for commission of a serious rule violation, defined to include "[a]ny act for which the inmate could be prosecuted for a [misdemeanor or felony] whether or not prosecution is undertaken." 15 Cal.Admin.Code Sec. 3315 (1987). The notice of his hearing expressly informed him that he was charged with a serious rule violation, and described the charge as "escape without force." Hanline adequately was informed of the charge against him.
 
 
 18
 Hanline's second contention is that he did not receive due process at the hearing. Although "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply," Wolff v. McDonnell, 418 U.S. 539, 556 (1974), where such proceedings can lead to restrictions of liberty, "the inmate should be allowed to call witnesses and present documentary evidence ... when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals," id. at 566. The inmate also must be given advance notice of the charges and a written explanation of the decision. Id. at 564-65.
 
 
 19
 The State claims that, after Hanline was given notice of the hearing, he was informed that he could present evidence and call witnesses, and he was offered the services of a staff assistant. The State claims that Hanline affirmatively refused to avail himself of any of these opportunities and waived his right to present evidence by refusing to participate in the hearing. The State supports its claims with a variety of documents, including a copy of a declaration by the prison employee assigned to assist Hanline as a staff assistant, and records relating to the hearing and Hanline's appeal within the prison system.
 
 
 20
 Hanline, however, contests the factual assertions of the prison employees, and suggests that much of the State's documentation was fabricated after the fact. Specifically, he alleges that, contrary to the reports of the prison employees, his hearing was a sham and he never was offered a meaningful opportunity to be heard. Hanline describes the hearing as follows:
 
 
 21
 As I entered the room, [the hearing officer] said in substance, "You know what you're here for?", to which I replied, "Yes." Then [the officer] said, "You know you're guilty; go back to your cell." No other persons were present and I was directly escorted back to my cell. Military style orders were used to compel me to attend and leave this hearing, at no time was I given any opportunity to defend myself or ask any questions; not was I notified that I had a right to present any evidence or request witnesses.
 
 
 22
 These allegations are sufficient to create a genuine issue of fact as to whether Hanline received the process he was due. See Blackledge v. Allison, 431 U.S. 63, 82 n. 25 (1977) ("before dismissing facially adequate allegations short of an evidentiary hearing, ordinarily a district court should seek as a minimum to obtain affidavits from all persons likely to have firsthand knowledge [of the disputed issue]").
 
 
 23
 Accordingly, if the district court on remand determines that Hanline was subjected to more restrictive custody because of the disciplinary proceeding, it should consider the merits of his claim that he was denied due process at that proceeding.
 
 
 24
 REVERSED and REMANDED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3