**Richard Allan MORAN, Petitioner–Appellant,**

v.

**Salvador GODINEZ, Warden, Respondent–Appellee.**

No. 91–15609.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 25, 1994.

Submission Deferred May 16, 1994.

Resubmitted July 1, 1994.

Filed Nov. 15, 1994.

Amended June 2, 1995.

Cal J. Potter, III, Las Vegas, NV, and Edward Chikofsky, Washington College of Law, the American University, Washington, DC, for petitioner-appellant.

Frankie Sue Del Papa, Atty. Gen., and David Sarnowski, Chief Deputy Atty. Gen., Carson City, NV, for respondent-appellee.

Before FARRIS, PREGERSON and THOMPSON, Circuit Judges.

Opinion by Judge THOMPSON; Dissent by Judge PREGERSON.

### ORDER

The opinion filed November 15, 1994, *Moran v. Godinez*, 40 F.3d 1567 (9th Cir.1994), is amended as follows:

1. At page 1572, the word "possible" in the first sentence of the first full paragraph in the righthand column is changed to "impossible". With this change the sentence will read:

> When a state court wrongfully fails to hold a competency hearing, "it often may be impossible to repair the damage retrospectively."

2. At page 1572, the word "However" is inserted at the beginning of the second sentence in the first full paragraph in the right-

hand column. With this change, the sentence will begin: "However, although retrospective competency hearings are disfavored,".

3. At page 1572, the *"But see"* signal and the citation to *United States v. Aponte,* 591 F.2d 1247 (9th Cir.1978) which follows this signal at the end of the third sentence in the second full paragraph in the righthand column are deleted, and the third sentence in that paragraph which begins: "He was ideally situated", is changed to read:

His familiarity with the case made him well situated to adduce any additional evidence needed to determine Moran's competency.

4. At page 1574, the phrase "substantive constitutional right" in the second sentence of the second full paragraph in the righthand column is changed to "substantive right". The sentence will then read:

Only the denial or misapplication of state procedures that results in the deprivation of a substantive right will implicate a federally recognized liberty interest.

5. At page 1574, the phrase "substantive constitutional right" in the second sentence of the last paragraph in the righthand column is changed to read "substantive right". With this change, the sentence will read:

This violation of state law, however, did not result in the deprivation of a substantive right, because the state provided Moran with constitutionally adequate procedures to evaluate his competency, *see Drope* [*v. Missouri* ], 420 U.S. [162] at 172, 95 S.Ct. [896] at 904 [43 L.Ed.2d 103 (1975) ], even with the burden of proof on Moran.

With the foregoing amendments, Judges Farris and Thompson voted to deny the petition for rehearing and to reject the suggestion for rehearing en banc. Judge Pregerson voted to grant the petition for rehearing and to accept the suggestion for rehearing en banc.

The full court was advised of the suggestion for rehearing en banc. An active judge requested a vote on whether to rehear the cause en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc rehearing. Fed.R.App.P. 35.

The petition for rehearing is denied and the suggestion for rehearing en banc is rejected. Judge Pregerson dissents from the refusal to hear this case en banc. His dissent is filed with this order.

The appellant's motion to file a letter reply to the State's response to the petition for rehearing is granted.

PREGERSON, Circuit Judge, dissenting, in which REINHARDT, Circuit Judge, joins:

I dissent from the refusal to rehear this case en banc. The majority opinion is flawed in three very serious respects. I discussed two of these errors in my dissent from the panel's decision in this case, *Moran v. Godinez,* 40 F.3d 1567, 1577–1586 (9th Cir.1994) (Pregerson, J., dissenting), and I will summarize those two issues only briefly here. The third error is an error of equal magnitude, which I will set forth in more detail below.

First, the majority erred in concluding that the retrospective competency hearing in which Moran was allocated the burden of proof cured the trial judge's error in failing to hold a contemporaneous hearing as to Moran's competence. A violation of the trial court's obligation to hold a competency hearing under *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), can only be cured by a post-conviction hearing in which the *state* bears the burden of proving the defendant was competent to stand trial.

Second, the majority opinion completely fails to examine whether Moran's mental state and the drugs he was given subverted his decisions to waive counsel and plead guilty. In concluding that the *Faretta* canvass was adequate, *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the majority fails to acknowledge that the trial court was required to exercise a heightened degree of care because Moran was unstable to the point of suicide, he was under the influence of state-prescribed drugs, and he was facing the death sentence. *See United States v. Christensen,* 18 F.3d 822, 825–26 (9th Cir.1994).

Third, the majority in *Moran* has adopted a novel and unsupported definition of what constitutes a state-created liberty interest. This definition directly conflicts with existing precedent and represents a radical departure in the law.

Moran raised a due process claim because the trial court violated the law of Nevada by placing the burden of proof regarding his competence to stand trial upon the defendant rather than the state.[1] Moran's due process claim is thus relatively straightforward: state law governing *Pate* violations creates a liberty interest which is protected under the Due Process Clause of the Fourteenth Amendment, and the state's failure to adhere to its own law in conducting the post-conviction hearing violated Moran's right to due process.

As the majority notes, two requirements must be met for a protected liberty interest to be created: first, the state rule must contain substantive predicates triggering its application; second, the state law must contain explicit, mandatory language concerning the outcome once the substantive predicates are met. *Moran*, 40 F.3d at 1574.

Here, as Moran points out, the *Doggett* decision of the Nevada Supreme Court clearly contains the necessary substantive predicate ("when the trial court has failed to follow the procedural safeguards of *Pate*"), as well as explicit, mandatory language concerning the outcome ("the State *is required* to forego its usual requirement that the defendant establish his incompetence as of the date of the original trial."). *Moran*, 40 F.3d

at 1574 (quoting *Doggett*, 572 P.2d at 210) (emphasis added); *see also Ballard v. Estelle*, 937 F.2d 453, 456 (9th Cir.1991) (finding that a state-created liberty interest exists when, as here, the state misapplies its own law). Therefore it is clear that Moran has established the existence of a state-created liberty interest. Nevertheless, the majority concludes that no liberty interest has been created by *Doggett*.

The *only* justification provided by the majority (in its *unamended* opinion) for concluding that no state liberty interest exists is that the state rule does not protect a "substantive constitutional right" because the federal Constitution does not require the burden of proof to be placed upon the state. *Moran*, 40 F.3d at 1574. In effect, the majority holds that courts cannot recognize the existence of a liberty interest when a state law creates one *unless* that liberty interest is also independently guaranteed by the federal Constitution.

The panel has now amended its opinion, and deleted the word "constitutional" in two places within its discussion of Moran's state liberty interest claim.[2] Unfortunately, by eliminating the word "constitutional," the panel has not erased the conflict its opinion creates with existing precedent. The problem with the opinion, both the original version and the amended one, is *not* the terminology that the panel uses to describe the "substantive right" requirement, but the meaning that the panel assigns to that requirement. As the opinion still makes clear,[3]

1. *See Doggett v. Warden*, 93 Nev. 591, 572 P.2d 207, 210 (1977).

2. The passage affected by the majority's order amending the opinion states:

> Only the denial or misapplication of state procedures that results in the deprivation of a substantive *constitutional* right will implicate a federally recognized liberty interest.
> Here, the post-conviction court violated Nevada law when it placed the burden of proving competency on Moran. This violation of state law, however, did not result in the deprivation of a substantive *constitutional* right, because the state provided Moran with constitutionally adequate procedures to evaluate his competency, even with the burden of proof on Moran.

*Moran*, 40 F.3d at 1574 (citations omitted). The underscored words have been removed from the opinion.

3. A comparison of the revised opinion with the original opinion makes clear that the majority has not changed its analysis in any meaningful way. In the original version of the opinion, the panel held that a state-created liberty interest could not be recognized because the state law did not protect "a substantive constitutional right." *Moran*, 40 F.3d at 1574. Now it holds that a protected interest cannot be recognized because state law does not protect a "substantive right." *See* note 2 *supra*. However, the justification for the panel's conclusion is precisely the same in both versions of the opinion; in the amended opinion, the panel once again holds

the "substantive right" requirement means that state-created liberty interests may only be recognized when the right in question is independently protected by the federal Constitution. This is a rule sharply at odds with existing precedent.

The majority's conclusion that no protected liberty interest exists unless the liberty interest is also independently guaranteed by the federal Constitution is in direct conflict with the explicit holdings of at least two Ninth Circuit decisions. In *Fetterly v. Paskett*, 997 F.2d 1295 (9th Cir.1993), we held that a state court's failure to weigh sentencing factors in the manner required by state law established "a cognizable claim that in enacting and enforcing [the statute, the state] has created a liberty interest protected under the Due Process Clause of the Fourteenth Amendment." *Id.* at 1301. In reaching this conclusion, we specifically held:

> There is, of course, nothing in the Constitution of the United States that requires Idaho's legislature to approach balancing as it has done in [the state statute]. However, the failure of a state to abide by its own statutory commands may implicate a liberty interest protected by the Fourteenth Amendment against arbitrary deprivation by a state.

*Id.* at 1300 (emphasis added); *see also Campbell v. Blodgett*, 997 F.2d 512, 522 (9th Cir.1993).

Moreover, the justification provided for concluding that no protected liberty interest exists directly conflicts with a number of Supreme Court decisions. These decisions make clear that a state-created liberty interest can exist even when the right in question is not independently guaranteed by the federal Constitution. For example, in *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), the Supreme Court noted that "[l]iberty interests protected by the

Fourteenth Amendment may arise from *two* sources—the Due Process Clause itself and the laws of the States." *Hewitt*, 459 U.S. at 466, 103 S.Ct. at 868–69 (emphasis added). In *Hewitt*, the Court rejected the plaintiff's claim that the federal Due Process Clause independently guaranteed an interest in being confined to a general population cell. *Id.* at 466–67, 103 S.Ct. at 868–69. Nevertheless, the Court concluded that the state had created a protected liberty interest by adopting specific procedures for confining an inmate to administrative segregation. *Id.* at 470–71, 103 S.Ct. at 870–71.

Similarly, in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court recognized a state-created liberty interest in prisoners' receiving good-time credits despite the fact that the federal Due Process Clause did not adequately guarantee this type of liberty interest:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior.... But the state having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within the Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Id.* at 557, 94 S.Ct. at 2975 (emphasis added). Thus, the majority's flawed approach for determining what constitutes a state-created liberty interest directly conflicts with existing Ninth Circuit and Supreme Court precedent,

---

that no state-created liberty interest can be recognized in this case on the ground that the "violation of state law did not result in the deprivation of a substantive right, *because the state provided Moran with constitutionally adequate procedures to evaluate his competency, even with the burden of proof on Moran." Moran*, 40 F.3d at 1574–75 (emphasis added). Once again, the majority then relies for this proposition on the Supreme Court's decision

in *Medina v. California*, —— U.S. ——, ——, 112 S.Ct. 2572, 2579, 120 L.Ed.2d 353 (1992), which held that the *federal Constitution* does not require the state to bear the burden of proof regarding competency. *Id.* at 1575. Thus, according to the majority, a "substantive right," just like a "substantive constitutional right," is one that is independently guaranteed under our Constitution.

and its egregious error is likely to have serious repercussions in the future.

For this reason, and for the other two reasons discussed above, en banc review is warranted in this case. I therefore dissent from the court's refusal to rehear this case en banc.

## OPINION

THOMPSON, Circuit Judge:

Richard Allan Moran pleaded guilty to three counts of capital murder and was sentenced to death by a Nevada state court. After exhausting his state court appeals, he filed a petition for habeas corpus in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 2254. The district court denied his petition and Moran appeals. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

## FACTS AND PROCEEDINGS

On August 13, 1984, Moran summoned police to the hospital room where he was recuperating from an attempted suicide. He confessed to killing his ex-wife at her home and two people at the Red Pearl Saloon. He was charged with three counts of capital murder. Initially, he pleaded not guilty to each count. Detailed facts of the murders and the circumstances of Moran's confession are set forth in *Godinez v. Moran,* — U.S. —, —— ———, 113 S.Ct. 2680, 2682–84, 125 L.Ed.2d 321 (1993), and *Moran v. State,* 103 Nev. 138, 140–41, 734 P.2d 712, 713 (1987).

On November 28, 1984, Moran appeared before the Nevada trial court. He said he wanted to discharge his attorneys and plead guilty to prevent the presentation of mitigating evidence on his behalf.

Before accepting Moran's waiver of counsel and guilty pleas, the court interrogated Moran at length. During this interrogation, the following colloquy occurred:

The Court: Are you presently under the influence of any drug or alcohol?

Moran: Just what they give me in, you know, medications.

Although Moran indicated he was under the influence of medications, the trial court made no inquiry as to the medications he had been given, the dosages, the times when he was medicated, or how the medications affected him. The court simply moved on to other questions, and eventually accepted Moran's waiver of counsel and guilty pleas.

On January 21, 1985, a three-judge Nevada state court sentenced Moran to death for each of the three murders. On appeal, the Nevada Supreme Court affirmed Moran's death sentences for the two Red Pearl Saloon murders, but reversed his death sentence for the murder of his ex-wife. On this count, the Nevada Supreme Court remanded for imposition of a life sentence without possibility of parole. *Id.* at 141–42, 734 P.2d at 714.

On July 30, 1987, Moran filed a petition in the Nevada state court for post-conviction relief. He alleged his guilty pleas and waiver of counsel were involuntary because he was "under the influence of drugs," he was mentally incompetent to represent himself, and the trial court failed to conduct a proper canvass "as to mental and legal competency." After an evidentiary hearing, the Nevada post-conviction court found Moran was competent to represent himself and plead guilty, and his guilty pleas and waiver of counsel were voluntary. The Nevada Supreme Court dismissed Moran's appeal. *Moran v. Warden,* 105 Nev. 1041, 810 P.2d 335, *cert. denied sub nom. Moran v. Whitley,* 493 U.S. 874, 110 S.Ct. 207, 107 L.Ed.2d 160 (1989).

Moran then filed a habeas petition in the United States District Court for the District of Nevada. The district court denied the petition. We reversed in *Moran v. Godinez,* 972 F.2d 263 (9th Cir.1992). We concluded the state court should have entertained a good faith doubt during the November 28, 1984 change-of-plea proceedings as to Moran's competency to discharge counsel and plead guilty. *Id.* at 265. We held the failure of the trial court to conduct a competency hearing at that time violated Moran's right to due process. *Id.* We also held the 1987 post-conviction court failed to correct the trial court's error because the post-conviction court incorrectly applied the standard of competency to stand trial, which we stated was a lower standard than the standard of

competency to waive counsel and plead guilty. *Id.* at 267.

The Supreme Court reversed. *Godinez,* —— U.S. at ——, 113 S.Ct. at 2688. The Court held the standard for competency to waive counsel and plead guilty was identical to the standard for competency to stand trial. *Id.* at ——, 113 S.Ct. at 2686. The Court also stated when a court has reason to doubt a defendant's competence, in addition to the competency inquiry, the court "must satisfy itself that the waiver of his constitutional rights is knowing and voluntary." *Id.* at ——, 113 S.Ct. at 2687.[1] The Court remanded the cause to us for further proceedings. *Id.* at ——, 113 S.Ct. at 2688.

## STANDARD OF REVIEW

We review the denial of a habeas corpus petition de novo. *Mikes v. Borg,* 947 F.2d 353, 356 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3055, 120 L.Ed.2d 921 (1992).

## DISCUSSION

A. Competence to Waive Counsel and Plead Guilty

Due process requires a court to conduct a competency hearing on its own motion, before permitting a defendant to waive constitutional rights, whenever a reasonable judge would be expected to have a *bona fide* doubt as to the defendant's competence. *United States v. Lewis,* 991 F.2d 524, 527 (9th Cir.) (competence to plead guilty), *cert. denied,* —— U.S. ——, 114 S.Ct. 216, 126 L.Ed.2d 172 (1993); *Harding v. Lewis,* 834 F.2d 853, 856 (9th Cir.1987) (competence to waive counsel), *cert. denied,* 488 U.S. 871, 109 S.Ct. 182, 102 L.Ed.2d 151 (1988); *Chavez v. United States,* 656 F.2d 512, 515–16 (9th Cir.1981) (competence to plead guilty). A *bona fide* doubt should exist when there is substantial evidence of incompetence. *Lewis,* 991 F.2d at 527; *Harding,* 834 F.2d at 856; *Chavez,* 656 F.2d at 517. Although no particular facts signal incompetence, suggestive evidence includes a defendant's demean-

or before the trial court, previous irrational behavior, and available medical evaluations. *Drope v. Missouri,* 420 U.S. 162, 180, 95 S.Ct. 896, 908, 43 L.Ed.2d 103 (1975); *Lewis,* 991 F.2d at 527; *Harding,* 834 F.2d at 856.

As we said in our previous decision, a reasonable jurist should have entertained a good faith doubt as to Moran's competence during the November 28, 1984 change-of-plea hearing. *Moran,* 972 F.2d at 265. When the trial court asked Moran whether he was "presently under the influence of drugs or alcohol," Moran indicated he was taking medications. Although the court made no inquiry, it is not disputed the medications Moran was taking were Inderal, Dilantin, Phenobarbital, and Vistaril. Inderal, a "beta-blocker," is used in the management of hypertension. Physician's Desk Reference (42d ed. 1988) at 650–52; Docket No. 26, Exhibit III. Dilantin is an antiepileptic drug that inhibits the spread of seizure activity in the motor cortex and is related to barbiturates in its chemical structure. *Id.* at 1543–45. Vistaril is used for relief of anxiety and tension associated with psychoneurosis. It acts on certain key regions of the central nervous system. *Id.* at 1625–26. Phenobarbital is a sedative used to counteract central nervous system stimulation. *Id.* at 1667–68. It is also not disputed that these medications were given to Moran while he was in jail awaiting trial, although the record is silent as to what dosages he was given, the times they were administered, and the effect they had on him.

The court also was aware that three months before the hearing, Moran attempted suicide, and that he wanted to fire his attorneys, plead guilty to three counts of capital murder, and die.

In these circumstances, the state trial court should have entertained a *bona fide* doubt as to Moran's competence. The court should have held an immediate competency hearing. It did not, and as a result Moran's right to procedural due process was violated. *Pate v. Robinson,* 383 U.S. 375, 385, 86 S.Ct. 836, 842, 15 L.Ed.2d 815 (1966); *Lewis,* 991

---

1. Whereas competency involves a defendant's general ability to understand the proceedings against him, "'[t]he purpose of the "knowing and voluntary" inquiry, by contrast, is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision.'" *Godinez,* —— U.S. at —— n. 12, 113 S.Ct. at 2687 n. 12.

F.2d at 527; *Harding,* 834 F.2d at 856. The state contends, however, that the 1987 post-conviction hearing cured this due process violation. We agree.

When a state court wrongfully fails to hold a competency hearing, "it often may be impossible to repair the damage retrospectively." *Evans v. Raines,* 800 F.2d 884, 888 (9th Cir.1986). However, although retrospective competency hearings are disfavored, *see Drope,* 420 U.S. at 183, 95 S.Ct. at 909; *Blazak v. Ricketts,* 1 F.3d 891, 894 n. 3 (9th Cir.1993) (Tang, J., for an equally divided court), *cert. denied sub nom. Lewis v. Blazak,* —— U.S. ——, 114 S.Ct. 1866, 128 L.Ed.2d 487 (1994), they are permissible whenever a court can conduct a meaningful hearing to evaluate retrospectively the competency of the defendant. *See Evans,* 800 F.2d at 888; *DeKaplany v. Enomoto,* 540 F.2d 975, 986 n. 11 (9th Cir.1976) (en banc), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 815, 50 L.Ed.2d 793 (1977). While the passage of time is significant in determining whether such a hearing can be held, *Pate,* 383 U.S. at 387, 86 S.Ct. at 843, medical reports contemporaneous to the time of the initial hearing greatly increase the chance for an accurate retrospective evaluation of a defendant's competence. *See Sieling v. Eyman,* 478 F.2d 211, 215–16 (9th Cir.1973). *See also Ray v. Bowen,* 843 F.2d 998, 1006 (7th Cir. 1988).

In the present case, the post-conviction hearing was held three years after Moran waived counsel and pleaded guilty. The judge who presided at the post-conviction hearing was the same judge who presided over the change-of-plea hearing. His familiarity with the case made him well situated to adduce any additional evidence needed to determine Moran's competency. The post-conviction court also had the benefit of two medical reports from psychiatrists who evaluated Moran's competency two months before the change-of-plea hearing, and who opined he was competent to stand trial. One of these examining psychiatrists testified before the post-conviction court.

The post-conviction court also had the records from two hearings held after the change-of-plea hearing. At a presentencing hearing on December 17, 1984, conducted less than three weeks after the change-of-plea hearing, Moran repeated his desire not to be represented by counsel, and stated he did not wish to withdraw his guilty pleas. He also indicated he did not want to present witnesses at the sentencing hearing, or allow an attorney to gather mitigating evidence. At the sentencing hearing on January 21, 1985, Moran refused to present mitigating evidence, cross-examine witnesses, or view the exhibits used by the state to prove aggravating circumstances. The judge who presided at these two subsequent hearings also presided at the change-of-plea hearing and post-conviction hearing.

Moran testified at the post-conviction hearing. He said the medications made him indifferent at the time he waived counsel and pleaded guilty, but he did not present any evidence to show that at the change-of-plea hearing he lacked the " 'ability to consult with his lawyer with a reasonable degree of rational understanding' [or that he then lacked] 'a rational [or] factual understanding of the proceedings against him.' " *Godinez,* —— U.S. at ——, 113 S.Ct. at 2685 (quoting *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960) (per curiam)).

State court competency determinations are entitled to a presumption of correctness. *Brewer v. Lewis,* 989 F.2d 1021, 1027 (9th Cir.1993). We will overturn a competency finding only if it is not fairly supported by the record. *Demosthenes v. Baal,* 495 U.S. 731, 735, 110 S.Ct. 2223, 2225, 109 L.Ed.2d 762 (1990) (per curiam); *Maggio v. Fulford,* 462 U.S. 111, 117, 103 S.Ct. 2261, 2264, 76 L.Ed.2d 794 (1983) (per curiam); *King v. Brown,* 8 F.3d 1403, 1408 (9th Cir.1993); *Brewer,* 989 F.2d at 1027.

The trial court should have had a *bona fide* doubt as to Moran's competence during the November 28, 1984 change-of-plea hearing. It should have conducted a competency hearing at that time. However, because the retrospective determination of Moran's competence by the post-conviction court in 1987 is fairly supported by the record, we have no basis to overturn it. *See Evans,* 800 F.2d at 887 ("There was conflicting [evidence] on this

issue, but the state court resolved the conflicts in the state's favor. Its resolution is 'fairly supported by the record.' ") (quoting 28 U.S.C. § 2254(d) (1992)). *See also Brewer,* 989 F.2d at 1027.

Moran challenges the findings of the post-conviction court by arguing that the court incorrectly placed the burden of proof on him to establish his incompetence. He relies on *James v. Singletary,* 957 F.2d 1562, 1570–71 (11th Cir.1992).

In *James,* 957 F.2d at 1570–71, the Eleventh Circuit interpreted *Pate,* 383 U.S. at 385, 86 S.Ct. at 842, to require a defendant to first establish that the trial court failed to conduct a competency hearing at the time a *bona fide* doubt should have arisen as to his competency. According to *James,* if a defendant establishes this *Pate* error, the burden of proof then shifts to the state to prove it is possible to hold a retrospective hearing to determine whether the defendant was competent to stand trial. *James,* 957 F.2d at 1570–71. If the state successfully demonstrates a meaningful retrospective hearing can be held, the burden of proof remains with the state at the retrospective proceeding to show the defendant was competent. *Id. But see Porter v. Estelle,* 709 F.2d 944, 949 n. 3 (5th Cir.1983) (petitioner bears burden of proof by preponderance of the evidence), *cert. denied sub nom. Porter v. McKaskle,* 466 U.S. 984, 104 S.Ct. 2367, 80 L.Ed.2d 838 (1984).

After the decision in *James,* the Supreme Court, in *Medina v. California,* — U.S. —, —, 112 S.Ct. 2572, 2579, 120 L.Ed.2d 353 (1992), held that a state may constitutionally place the burden of proof on a defendant at a competency hearing. The Court recognized a state must provide procedures "adequate to protect a defendant's right not to be tried or convicted while incompetent." *Id.* (internal quotations omitted). However,

> [o]nce a State provides a defendant access to procedures for making a competency evaluation, ... we perceive no basis for holding that due process further requires the State to assume the burden of vindicating the defendant's constitutional right by persuading the trier of fact that the defendant is competent to stand trial.

*Id.* Thus, so long as the state provides adequate procedures to assess competence, it constitutionally may assign the burden of proof to the defendant.

Although *Medina* involved a pretrial competency hearing, the Supreme Court's rationale is equally applicable to retrospective competency hearings. When it is established that a petitioner's competence can be accurately evaluated retrospectively, there is no compelling reason to require states to divert from their normal procedures for assessing competence. Moran's competence could be accurately evaluated retrospectively. Nevada was not constitutionally obligated to place the burden of proof on the prosecution to establish his competence, or to relieve him of the burden of establishing his incompetence.

Although there is no federal right to be free from the burden of proof in a retrospective state competency hearing, *Medina,* — U.S. at —, 112 S.Ct. at 2579, Moran contends that Nevada has created a federally protected state liberty interest in such a right. It is "well established that state laws can create liberty interests triggering federally enforceable procedural rights." *Dix v. County of Shasta,* 963 F.2d 1296, 1299 (9th Cir.1992). "Misapplication of these laws that lead to deprivations of those liberty interests by state institutions may be reviewed in federal habeas proceedings." *Ballard v. Estelle,* 937 F.2d 453, 456 (9th Cir.1991).

In *Kentucky Department of Corrections v. Thompson,* 490 U.S. 454, 462–63, 109 S.Ct. 1904, 1909–10, 104 L.Ed.2d 506 (1989), the Court held that to create a constitutionally protected liberty interest, a state law must contain substantive predicates governing an official's decision, and explicit language specifying the outcome that must be reached if the predicates are met. *See Dix,* 963 F.2d at 1299.

Moran contends that in *Doggett v. Warden,* 93 Nev. 591, 595, 572 P.2d 207, 210 (1977), Nevada created a constitutionally protected liberty interest relieving a defendant of the burden of proving his incompetence if he demonstrates the trial court committed a *Pate* error. In *Doggett,* the Nevada Supreme Court stated, "[W]hen the trial court

has failed to follow the procedural safeguards of *Pate* ... the State is required to forego its usual requirement that the defendant establish his incompetence as of the date of the original trial." *Id.*

There is a distinction between state-created procedures and the substantive liberty interests those procedures are meant to protect. *Olim v. Wakinekona,* 461 U.S. 238, 250, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."); *Smith v. Sumner,* 994 F.2d 1401, 1406–07 (9th Cir. 1993). Only the denial or misapplication of state procedures that results in the deprivation of a substantive right will implicate a federally recognized liberty interest. *See Olim,* 461 U.S. at 250–51, 103 S.Ct. at 1748 (state procedures that do not protect substantive rights do not create independent substantive rights); *Smith v. Sumner,* 994 F.2d at 1406; *Toussaint v. McCarthy,* 801 F.2d 1080, 1096–97 & n. 15 (9th Cir.1986), *cert. denied,* 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987).

Here, the post-conviction court violated Nevada law when it placed the burden of proving competency on Moran. *Doggett,* 93 Nev. at 595, 572 P.2d at 210. This violation of state law, however, did not result in the deprivation of a substantive right, because the state provided Moran with constitutionally adequate procedures to evaluate his competency, *see Drope,* 420 U.S. at 172, 95 S.Ct. at 904, even with the burden of proof on Moran. *Medina,* — U.S. at —, 112 S.Ct. at 2579. *See also Hernandez v. Ylst,* 930 F.2d 714, 719 (9th Cir.1991); *Middleton v. Cupp,* 768 F.2d 1083, 1085 (9th Cir.1985), *cert. denied,* 478 U.S. 1021, 106 S.Ct. 3336, 92 L.Ed.2d 741 (1986). *Cf. Campbell v. Blodgett,* 997 F.2d 512, 522 (9th Cir.1992), *aff'd on reh'g en banc,* 18 F.3d 662 (9th Cir.) (en banc), *cert. denied,* — U.S. —, 114 S.Ct. 1337, 127 L.Ed.2d 685 (1994); *Fetterly v. Paskett,* 997 F.2d 1295, 1297 (9th Cir.1993).

Moran also argues that because the post-conviction court failed to consider his claim that he was incompetent to discharge his counsel, it failed to cure the *Pate* violation.

We reject this argument. The post-conviction court considered and rejected Moran's claim that he was incompetent to plead guilty. The record supports this conclusion. The standard for competence to plead guilty is the same as the standard for competence to waive counsel. *Godinez,* — U.S. at — – —, 113 S.Ct. at 2686–87. Because the two standards are identical, one finding of competence suffices for both.

### B. Knowing and Voluntary Waivers

"In addition to determining that a defendant who seeks to plead guilty or waive counsel is competent, a trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary." *Godinez,* — U.S. at —, 113 S.Ct. at 2687. Whether a waiver of constitutional rights was made knowingly and voluntarily is a mixed question of law and fact which we review de novo. *Campbell v. Wood,* 18 F.3d 662, 672 (9th Cir.) (en banc), *cert. denied,* — U.S. —, 114 S.Ct. 2125, 128 L.Ed.2d 682 (1994); *Terrovona v. Kincheloe,* 852 F.2d 424, 427–28 (9th Cir.1988); *Harding,* 834 F.2d at 857.

#### 1. Waiver of Counsel

To determine whether a defendant actually understands the nature and consequences of his waiver of counsel, the court must abide by the principles set forth in *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975). *Godinez,* — U.S. at — – —, 113 S.Ct. at 2687–88. Under *Faretta,* the defendant must "be aware of the nature of the charges against him, the possible penalties, and the dangers and disadvantages of self-representation." *United States v. Balough,* 820 F.2d 1485, 1487 (9th Cir. 1987). *See also Hendricks v. Zenon,* 993 F.2d 664, 669–70 (9th Cir.1993); *United States v. Robinson,* 913 F.2d 712, 714–15 (9th Cir.1990), *cert. denied,* 498 U.S. 1104, 111 S.Ct. 1006, 112 L.Ed.2d 1089 (1991); *Harding,* 834 F.2d at 857.

Prior to accepting Moran's guilty plea, the trial court conducted an in-depth colloquy to determine whether Moran was waiving counsel knowingly and intelligently. As recounted by the Supreme Court in *Godinez,* — U.S. at —, 113 S.Ct. at 2683,

The court advised [Moran] that he had a right both to the assistance of counsel and to self-representation, warned him of the "dangers and disadvantages" of self-representation, ... inquired into his understanding of the proceedings and his awareness of his rights, and asked why he had chosen to represent himself.

The trial court further explained the first-degree murder charges against Moran, stated the death penalty could be imposed, and inquired whether Moran understood the charges and penalties. The court asked whether Moran recognized the possible defenses to the crimes with which he was charged, and whether he had discussed these defenses with his counsel. *See Harding,* 834 F.2d at 857. Moran's affirmative answers to the court's questions were unequivocal. *See Robinson,* 913 F.2d at 714; *Adams v. Carroll,* 875 F.2d 1441, 1444 (9th Cir.1989).

The court's colloquy with Moran was probing and thorough, *see Von Moltke v. Gillies,* 332 U.S. 708, 723–34, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948), and satisfied its duty under *Faretta. See Balough,* 820 F.2d at 1487–88. We conclude, as did the post-conviction Nevada state court, that Moran knowingly and voluntarily waived his right to counsel.

### 2. Guilty Pleas

To determine whether a defendant's guilty plea is "a voluntary and intelligent choice among the alternative courses of action," *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970), a trial court must follow the guidelines set forth in *Boykin v. Alabama,* 395 U.S. 238, 242–43, 89 S.Ct. 1709, 1711–12, 23 L.Ed.2d 274 (1969). *See Godinez,* —— U.S. at —— n. 12, 113 S.Ct. at 2687 n. 12. Under *Boykin,* the record of the plea proceeding must reflect that the defendant voluntarily waived his right to a jury trial, the right to confront his accusers, and his privilege against compulsory self-incrimination. *Parke v. Raley,* —— U.S. ——, ——, 113 S.Ct. 517, 523, 121 L.Ed.2d 391 (1992); *Boykin,* 395 U.S. at 242–43, 89 S.Ct. at 1711–12; *United States v. Butcher,* 926 F.2d 811, 817 (9th Cir.), *cert. denied,* 500 U.S. 959, 111 S.Ct. 2273, 114 L.Ed.2d 724 (1991).

Prior to accepting Moran's guilty pleas, the trial court engaged in an extensive canvass to determine whether Moran understood the rights he was forsaking by pleading guilty. As noted by the Court in *Godinez,* —— U.S. at ——, 113 S.Ct. at 2683, the trial court

determined that [Moran] was not pleading guilty in response to threats or promises, that he understood the nature of the charges against him and the consequences of pleading guilty, that he was aware of the rights he was giving up, and there was a factual basis for the pleas.

The trial court specifically asked Moran whether he understood his right to a trial by jury, his right to confront his accusers, and his privilege against compulsory self-incrimination. Moran answered affirmatively to each of these inquiries. The trial court did not err in determining Moran knowingly and voluntarily pleaded guilty.[2]

### C. Ineffective Assistance of Counsel

Moran contends he received ineffective assistance of counsel before he discharged his attorneys at his change-of-plea hearing.

A defendant claiming ineffective assistance of counsel must demonstrate that counsel's actions were outside the range of professionally competent assistance, and the defendant was prejudiced by counsel's actions. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Iaea v. Sunn,* 800 F.2d 861, 864 (9th Cir.1986). Whether a defendant received ineffective assistance of counsel is a legal question we review de novo. *United States v. Swanson,* 943 F.2d 1070, 1072 (9th Cir.1991).

Moran argues his attorneys failed to investigate whether he was competent to plead guilty, waive counsel, and forego the presentation of mitigating evidence. This argument lacks merit. Moran's attorneys had him evaluated by two psychiatrists. These psychiatrists provided detailed, reasoned reports which contained their individual opinions that

**2.** The post-conviction court also found Moran knowingly and voluntarily pleaded guilty.

Moran was competent to stand trial. Moran's attorneys were entitled to rely on these reports. The standard for competence to stand trial is identical to the standard for competence to waive constitutional rights. *Godinez,* —— U.S. at —— – ——, 113 S.Ct. at 2686–87. Because counsel could rely on the psychiatrists' reports that Moran was competent to stand trial, it was unnecessary for them to investigate his competence to plead guilty, waive counsel or forego the presentation of mitigating evidence.

Moran also argues his attorneys failed to investigate and research all possible defenses that might have been presented as mitigating evidence at the penalty phase of his capital sentencing hearing. Moran offers no evidence to support this claim. While it is true "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066, Moran fired his attorneys precisely because they wanted to gather and introduce mitigating evidence on his behalf.

Moran also contends his counsels' failure to attempt to prevent the use of his confession taken while he was in the hospital recovering from his suicide attempt constituted ineffective assistance. We decline to consider this contention. In *Hudson v. Moran,* 760 F.2d 1027, 1029–30 (9th Cir.), *cert. denied,* 474 U.S. 981, 106 S.Ct. 387, 88 L.Ed.2d 339 (1985), we stated,

> As a general rule, one who voluntarily and intelligently pleads guilty to a criminal charge may not subsequently seek federal habeas corpus relief on the basis of pre-plea constitutional violations. A defendant may only attack the "voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases."

*Id.* (internal citations omitted) (quoting *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973)). *See also McMann v. Richardson,* 397 U.S. 759, 770–71, 90 S.Ct. 1441, 1448–49, 25 L.Ed.2d 763 (1970). *But see Creech v. Arave,* 947 F.2d 873, 876–79 (9th Cir.1991), (habeas appeal addressing petitioner's argument that counsel failed to provide certain information), *rev'd on other grounds,* —— U.S. ——, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993). Moran's contention that his attorneys were ineffective because they failed to attempt to prevent the use of his confession is the assertion of an alleged pre-plea constitutional violation. We will not consider that claim in this habeas appeal.

## CONCLUSION

The state trial court should have entertained a *bona fide* doubt as to Moran's competence during his November 28, 1984 change-of-plea hearing. The failure to hold a competency hearing at that time violated Moran's constitutional right to due process. *Pate,* 383 U.S. at 385, 86 S.Ct. at 842. That violation was cured, however, by the state court's post-conviction retrospective hearing held in 1987. That court found Moran was competent when he waived counsel and entered his guilty pleas. That finding is fairly supported by the record. Moran knowingly and voluntarily waived his right to counsel and pleaded guilty. He was not denied effective assistance of counsel.

AFFIRMED.

PREGERSON, Circuit Judge, dissenting:

I dissent.

I believe that the trial judge did not conduct an adequate inquiry to determine whether Moran's fateful decision to dismiss his counsel was animated by his own free will, or whether, instead, it was the product of state-prescribed drugs affecting Moran's precarious mental state.

The majority's analysis is flawed on two fronts. First, the failure of the trial judge to conduct an adequate inquiry violated Moran's constitutional procedural right, under *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), to a hearing to evaluate his mental *competence* whenever a doubt about such competence is raised. Contrary to the majority's conclusion, failure to hold such a hearing cannot be cured by a post-conviction hearing, years after the fact, in which the *defendant* is allocated the burden of retrospectively proving his competency.

Second, the judge's failure to conduct a proper inquiry calls into question whether Moran's guilty plea and waiver of right to counsel were knowingly, intelligently, and voluntarily tendered. The majority gives short shrift to Moran's strong argument that his waiver of constitutional rights was *not* knowing, intelligent, and voluntary. In my view, however, the trial judge's woefully inadequate inquiry into whether Moran's choice was truly free and rational necessitates a more detailed look at the evidence. Moreover, this is not one of the rare cases in which the totality of circumstances permits us to affirm a waiver of fundamental rights absent an adequate canvass by the trial judge.

I address each of these issues in turn.

## I. COMPETENCE: EFFECT OF THE *PATE* VIOLATION

As the majority notes, Moran told the trial judge that he was under the influence of state-prescribed drugs at the time he entered his guilty plea and dismissed his counsel. When combined with everything else the judge knew about Moran's state of mind, this statement should have been sufficient to raise a good faith doubt about Moran's competence to stand trial. I therefore agree with the majority's conclusion that the trial court was required to hold a *sua sponte* hearing under *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836. It is undisputed that the trial judge did *not* do so.

This failure to hold a contemporaneous hearing to determine competence violated Moran's constitutional right to a fair trial. *Id.* Furthermore, there is no doubt that failure to conduct an adequate *Pate* hearing is reversible error on habeas review. *Pate* itself was a habeas case. As I read the majority opinion, we are all in agreement up to this point.

The more difficult question, on which we *disagree*, is whether the State's constitutional error was cured by the post-conviction hearing held a few years after the trial. The

salient fact about the post-conviction hearing is that the presiding judge *placed the burden of proof as to Moran's competence on Moran.* For a number of reasons, I am convinced that this post-conviction hearing was constitutionally inadequate to cure the state's initial failure to hold a contemporaneous *Pate* hearing.

## A. Constitutional requirements to cure a *Pate* violation.

It is clear that a *Pate* violation can only be cured by a post-conviction hearing in which the *state* bears the burden of proving that the defendant was competent to stand trial. In other words, the state must bear the burden of *retrospectively* proving competence if the trial court failed to provide the defendant with the constitutionally required *contemporaneous* hearing.[1]

We need look no further than *Pate* itself to see that this is true. The opinion in *Pate* can be divided analytically into two parts. In part one, discussing the constitutional violation, the Supreme Court confirmed a defendant's right to a contemporaneous hearing where a good faith doubt arises before sentencing concerning the defendant's competence to stand trial. In the second part of *Pate*, discussing the appropriate *relief* for such a violation, the Supreme Court established that where the trial court failed to hold the required contemporaneous hearing the state then bears the burden of nonpersuasion in any subsequent competency determination.

The second part of *Pate* discusses the appropriate relief for a *Pate* violation. This second part of *Pate* has not been analyzed as often as the first, but it is well established and frequently applied. In *Pate*, after determining that the defendant's constitutional right to a contemporaneous competency hearing had been violated, the Supreme Court turned to the question of what relief was proper on habeas review. The state argued that it could cure the violation by

---

1. *Medina v. California,* —— U.S. ——, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992), cited by the majority, is not in conflict with this requirement that the state bear the burden of retrospectively proving competence where there has been a *Pate* violation. The interaction between *Pate* and *Medina* is discussed below.

holding a retrospective hearing, but the Court disagreed, noting that after six years there was insufficient evidence to make the required competency determination.

At this point, if the burden in a retrospective competency determination had been on the defendant, the Court would have affirmed the state court conviction. Instead, the Court reversed the conviction and remanded for a new trial; thus the Court established that the *burden* of proving a defendant's competence in a retrospective determination is *on the state.*

This precedent has been consistently followed by the Supreme Court, *see, e.g., Drope v. Missouri,* 420 U.S. 162, 183, 95 S.Ct. 896, 909, 43 L.Ed.2d 103 (1975) (reversing for new trial after finding that remand for psychiatric evaluation to determine whether defendant was competent to stand trial six years ago was not a proper remedy), and has frequently been applied by this circuit, *see, e.g., Evans v. Raines,* 800 F.2d 884, 888 (9th Cir. 1986) (upholding the findings of a competency hearing held five years ex post facto only because the evidence was sufficient to retrospectively determine competence); *Sieling v. Eyman,* 478 F.2d 211, 215–16 (9th Cir.1973) (remanding to trial court to determine whether there was sufficient evidence to determine competence retrospectively).[2]

In every case where our court or the Supreme Court has addressed the sufficiency of the evidence for making a retrospective determination, we have affirmed the view that the state bears the burden of nonpersuasion: where the evidence is insufficient to make a retrospective determination, the conviction is reversed and the case remanded for a new trial. The necessary conclusion from these cases is that the state bears the burden of proving competence in a retrospective hearing held *after* a *Pate* violation. This is precisely the conclusion of the Eleventh Circuit, *James v. Singletary,* 957 F.2d 1562 (11th Cir.1992), which examined the issue in greater detail than any other circuit.[3]

> "Once the petitioner has established [that the trial court should sua sponte have held a competency hearing] ... he or she has made out a federal constitutional violation. At this point, *the state* has the opportunity to establish before the federal district court the petitioner's competency at the time of trial."

*James,* 957 F.2d at 1571 (emphasis added).

The majority argues that *Medina v. California,* —— U.S. ——, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992), requires us to disregard the compelling logic of *James.* In *Medina,* the Supreme Court addressed the question, not addressed in *Pate,* of who must bear the burden of proof in a *contemporaneous Pate* hearing. *Medina* determined that the Constitution permits the states to place the burden on the defendant in the required contem-

---

**2.** The majority attempts to distinguish these cases by emphasizing that the test for determining if a remand is appropriate after a *Pate* violation is whether it remains possible, despite the passage of time, to hold a meaningful retrospective hearing. But the majority never refutes Moran's compelling argument that the *logic* of *Pate* is that the state, not the defendant, must bear the burden of any loss of evidence because of the time that has elapsed since the *Pate* violation.

**3.** Only the 5th Circuit has stated otherwise. *Wheat v. Thigpen,* 793 F.2d 621, 630–31 (5th Cir.1986), *cert. denied,* 480 U.S. 930, 107 S.Ct. 1566, 94 L.Ed.2d 759 (1987); *Bruce v. Estelle,* 536 F.2d 1051, 1059 (5th Cir.1976) (*Bruce II*), *cert. denied,* 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977). *But see Lee v. Alabama,* 386 F.2d 97, 105 (5th Cir.1967) (remanding to district court to determine whether "it can be *shown by the state* through evidence available at this time and meeting appropriate standards of

proof that in fact [the defendant] was competent" at the time of his trial) (emphasis added), *cert. denied* 395 U.S. 927, 89 S.Ct. 1787, 23 L.Ed.2d 246.

The state's brief cites an additional case that it claims places the burden of proof in a retrospective habeas hearing on the prisoner to prove incompetence. *See* red brief at 7 (citing *Blazak v. Ricketts,* 1 F.3d 891 (9th Cir.1993)).

The state has mis-cited this case. Nowhere does it say, as claimed by the state, that on habeas review the burden is on the prisoner to prove the fact of his incompetency after the state has violated *Pate.*

Two other cases cited by the state, *Fallada v. Dugger,* 819 F.2d 1564, 1567–68 n. 1 (11th Cir. 1987), and *Nathaniel v. Estelle,* 493 F.2d 794, 798 n. 6 (5th Cir.1974), are completely inapposite. These discuss the burden of proof as to the substantive issue of competence where no *Pate* violation occurred at the trial. Here we are discussing the burden where there was such a violation.

poraneous competency hearing. This holding is completely consistent with *Pate* and *James.*

The *Medina* opinion explicitly discussed and re-affirmed the first part of *Pate,* that a defendant is entitled to a contemporaneous hearing in the event doubts are raised as to competence. *Id.* at ———–———, 112 S.Ct. at 2578–79. The Supreme Court went on to explain that the allocation of the burden of proof in such a *contemporaneous* hearing is not of constitutional dimension. *Id.* The test for whether a state procedure violates the Constitution is that of fundamental fairness, and no principle of fundamental fairness is violated by placing on a defendant the burden of proof in a contemporaneous competency hearing. *Id.* One of the reasons that fundamental fairness is not violated is that in a contemporaneous hearing only a very small proportion of the cases are affected by the state's allocation of the burden of proof: cases where the evidence as to competence is in perfect equipoise. *Id.*

The *Medina* opinion did not directly or indirectly address the second part of *Pate* discussing the proper relief when no contemporaneous hearing is held despite doubt about the defendant's competence. In *Medina,* the required contemporaneous hearing *was* held. The only question was the adequacy of that contemporaneous hearing. Thus, *Medina* did not discuss the burden of proof in a *retrospective* competence determination *after* a *Pate* violation. *See* Appellee's brief at 5 (conceding this point). We therefore remain bound by Pate and its progeny on this issue.

Even if the holding in *Medina* were read to cast some doubt on the second part of *Pate,* there are good reasons not to extend *Medina* in such a radical fashion as does the majority. In contrast with *contemporaneous* determinations, it will frequently be the case that the critical facts necessary for making a *retrospective* competency determination are unavailable years after the trial, thereby leaving the evidence in equipoise on the issue whether the defendant was competent at the time of trial. *See Evans,* 800 F.2d at 888 ("When the state court fails in [its duty to conduct a contemporaneous hearing], it often may be impossible to repair the damage retrospectively.").

Allowing the burden to fall on the defendant to prove incompetence in the retrospective determination would result in affirmances in *every* case where the record has become stale. This is the exact opposite of the current practice. Yet in such cases it is the state court's error in failing to hold a contemporaneous hearing that results in the loss of evidence. It is fundamentally unfair to allow the conviction of a possibly incompetent defendant to stand *because* of the *state's failure* to observe constitutionally mandated procedures in the first instance.

The case at bar is a case in point. It would not have been difficult at the time of Moran's trial to have conducted a hearing to determine the actual effect of the drugs that Moran had ingested on his ability to meaningfully participate in trial decisions. In contrast, by the time of his post-conviction hearing the only evidence of the *actual* effect of the drugs was Moran's testimony that they caused him not to care about what happened. The Nevada Supreme Court specifically relied on the paucity of evidence about the actual effect of the drugs in dismissing Moran's appeal. 3/15/89 Order Dismissing Appeal at 3–4 ("Moran presented no medical evidence in the post-conviction hearing which *necessarily* established that the medication influenced him to such an extent that he was unable to understand the meaning and consequences of his plea." (emphasis added)).[4] In other words, the Nevada Supreme Court specifically relied on Moran's failure to produce evidence that may have been available when the *Pate* hearing should have been held, but which was no longer available by the time of the post-conviction hearing.[5]

---

**4.** Of course there was also medical evidence about the *likely* effect of the drugs, evidence that was disregarded by the Nevada courts.

**5.** The majority's position, that the *Pate* violation was cured regardless of the burden of proof, is particularly untenable given that, as the majority admits, Nevada state law recognizes that a *Pate* violation can only be cured by a retrospective hearing in which the *state* bears the burden of persuasion on the issue of competency. No court has found that the state met any such

## II. KNOWING, VOLUNTARY, AND INTELLIGENT WAIVER

Even if it were determined that Moran was competent, I would conclude that his guilty plea and waiver of right to counsel were not knowingly and voluntarily tendered, as required by the Fifth, Sixth, and Fourteenth Amendments to the Constitution. The majority's discussion of this issue is very brief, and the majority completely fails to discuss the impact of Moran's mental problems and state-prescribed drugs on his decision.

The Nevada trial judge was required to determine whether Moran's waiver of constitutional rights was adequate to meet federal standards. Those standards are the same for a guilty plea and for a waiver of counsel. *Boykin v. Alabama,* 395 U.S. 238, 242–43, 89 S.Ct. 1709, 1711–12, 23 L.Ed.2d 274 (1969). Courts are required to "indulge in every reasonable presumption against waiver." *Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977) (in habeas proceeding, it is incumbent on the *State* to prove that a waiver was voluntary); *See also Parke v. Raley,* —— U.S. ——, ——, 113 S.Ct. 517, 523, 121 L.Ed.2d 391 (1992) (contrasting direct appeal, where the Constitution requires States to grant a presumption of invalidity to an uninformed guilty plea, with collateral challenge, including habeas petition, where there is no such presumption). Our review of the state's voluntariness determination is de novo, although we accord a presumption of correctness to the *factual findings* underpinning the state's ultimate voluntariness determination. *Terrovona v. Kincheloe,* 852 F.2d 424, 428 (9th Cir.1988) (state's voluntariness determination is not subject to 28 U.S.C. § 2254(d) presumption of correctness).

The competency determination and the knowing, intelligent and voluntary waiver determination require interrelated, but not identical, inquiries. Whereas the competency determination turns on whether Moran had the *capacity* to knowingly and voluntarily waive his rights, the knowing and voluntary inquiry turns on whether he actually *did* knowingly and voluntarily waive his rights. *Godinez v. Moran,* —— U.S. ——, —— n. 12, 113 S.Ct. 2680, 2687 n. 12, 125 L.Ed.2d 321 (1993).

A defendant who is incompetent obviously may not knowingly, intelligently, and voluntarily waive constitutional rights. *See Pate v. Robinson,* 383 U.S. 375, 384, 86 S.Ct. 836, 841, 15 L.Ed.2d 815 (1966). But a mere showing that a defendant is competent is not sufficient to demonstrate that the waiver of right to counsel was knowing, intelligent, and voluntary. "In this sense there *is* a 'heightened' standard for pleading guilty and for waiving the right to counsel...." *Moran,* —— U.S. at ——, 113 S.Ct. at 2687 (emphasis in original). Or, as Justice Frankfurter stated nearly a half century ago, "[t]here must be both the capacity to make an understanding choice *and* an absence of subverting factors so that the choice is clearly free and responsible." *Von Moltke v. Gillies,* 332 U.S. 708, 729, 68 S.Ct. 316, 326, 92 L.Ed. 309 (1948) (Frankfurter, J., concurring) (emphasis added).

The majority's critical error is that it unreasonably narrows this inquiry. It completely fails to examine whether Moran's mental state and the drugs he was given subverted his decisions to waive counsel and plead guilty.

In the context of Moran's waiver of counsel, the majority examines only whether Moran was advised of his rights and whether he indicated unequivocally that he understood those rights. Majority at pp. 699–700. The majority does not discuss whether, and if so to what extent, Moran's decision was affected by the drugs and by his clinically depressed state.

In the context of Moran's guilty plea, the majority quotes *North Carolina v. Alford* to

---

burden. Thus, no tribunal has made the findings about Moran's competence at the time of his trial that are required by state law to cure a *Pate* violation.

I do not mean by this to suggest that Nevada's rule, without more, created a sufficient liberty interest to be enforceable under federal law. Rather, the enforceable liberty interest is created by the *Pate* violation itself. Nevada's law merely underscores the fact that the violation was never cured, either under state law or federal law.

the effect that we must look to whether the guilty plea is "a voluntary and intelligent choice among the alternative courses of action," 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). But the majority does not apply this standard. Rather, it looks only to whether Moran "understood the rights he was forsaking...." *Id.* at 699. This is a different question from whether Moran made a knowing, voluntary, and intelligent *choice.*

Where a defendant's mental state has not been called into question, an inquiry such as that undertaken in the majority opinion is sufficient. But where, as here, the defendant was suicidal, depressed, and taking powerfully psychoactive drugs, we have an additional duty to determine whether these factors subverted his decision to such an extent that they precluded a truly free and rational choice. *See United States v. Christensen,* 18 F.3d 822, 825–26 (9th Cir.1994) (mental or emotional instability of defendant provoked suspicion that waiver of right to jury trial may not have been knowingly, voluntarily and intelligently tendered).

To do so, we are obliged to follow the two-step procedure discussed in the following section: First, we must determine whether the state trial court's transcript contains enough information for us to determine that the waiver was knowing intelligent and voluntary, i.e., if the *Faretta* canvass was adequate. Second, if the *Faretta* canvass was inadequate, as I believe it was, we must examine the entire record to determine whether, under the totality of the circumstances, this is one of the rare cases in which we may affirm a waiver of constitutional rights despite an inadequate waiver canvass. The majority fails to undertake such an analysis, and because of that failure comes to an erroneous conclusion.

### A. Procedural Requirements of *Faretta* and *Boykin.*

The Constitution requires a state trial court to engage in careful inquiry before

accepting a waiver of constitutional rights. *Arnold v. United States,* 414 F.2d 1056, 1058 (9th Cir.1969).

In the context of waiver of the right to counsel, this careful inquiry is accomplished by means of a *"Faretta* canvass." *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (establishing the right to self-representation, but only where the record establishes that the accused "knows what he is doing and his *choice* is made with eyes open" (emphasis added)).[6] To conduct a proper *Faretta* canvass, the trial court "must investigate as long and as thoroughly as the circumstances of the case before him demand." *Von Moltke,* 332 U.S. at 723–724, 68 S.Ct. at 323. "A colloquy conducted in a rote and mechanical fashion ... may look reassuring on the record but will do little to protect the rights of the accused." *United States v. Balough,* 820 F.2d 1485, 1488–90 (9th Cir.1987) (Kozinski, J., concurring). Thus, the court cannot meet the principles of *Faretta* by just going through the motions of merely eliciting the proper responses to boilerplate questions. Instead, "[a] judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered." 332 U.S. at 724, 68 S.Ct. at 323.

Despite the importance of the *Faretta* canvass, an inadequate *Faretta* inquiry by the trial court does not *conclusively* establish absence of effective waiver. *Mason v. Pitchess,* 440 F.2d 454 (9th Cir.1971). But we only rarely affirm a waiver of constitutional rights absent an adequate *Faretta* canvass on the record by the court to determine whether the waiver is understandingly and voluntarily offered. *Balough,* 820 F.2d at 1488–90. In fact, in *federal* court, when an accused's mental or emotional state has been called into question, "an in-depth colloquy which reasonably assures the court that under the particular facts of the case, the ... waiver was voluntarily, knowingly, and intel-

---

**6.** *Faretta* only discussed the requirements for acceptance of a defendant's waiver of counsel, but the standards are the same for acceptance of a waiver of counsel and for acceptance of a guilty plea. *Boykin,* 395 U.S. at 242–43, 89 S.Ct. at 1711–12. Because the standards are the same, I will henceforth refer to the *"Faretta"* canvass as shorthand for the judge's on-the-record inquiry about the knowing, intelligent, and voluntary nature of *both* the guilty plea *and* the waiver of counsel.

ligently made" is *required*. *Christensen*, 18 F.3d at 826 (reversing conviction because of failure to adequately canvass manic-depressive defendant before accepting written waiver of right to jury trial). Although we have not imposed a similar requirement on the states, *Christensen* suggests the skepticism with which a waiver of constitutional rights should be viewed when the defendant's mental state has been called into question and there has not been an adequate on-the-record inquiry into the effect of the mental state on the defendant's waiver.

## B. Adequacy of the *Faretta* canvass.

The majority expresses its view in summary fashion that the *Faretta* canvass was adequate as to both the guilty plea and waiver of counsel. The majority's summary analysis fails to acknowledge that the trial court was required to exercise a heightened degree of care because Mr. Moran was unstable to the point of suicide, because he was under the influence of state-prescribed drugs, and because he was facing the death sentence. Applying the required heightened standard, the canvass was inadequate because Moran's often rote responses to the court's questioning actually raised more questions than they answered.[7]

I am perplexed by majority's treatment of the *Faretta* canvass in this case. On the one hand, the majority finds the judge's question-

---

7. In addition to Moran's statements indicating that he was under the influence of state-prescribed drugs, the trial court should also have exercised a heightened degree of vigilance because, as the court knew, Moran had just recently attempted suicide by shooting himself in the abdomen and by slitting his wrists. The trial court also knew Moran had been kept in isolation during his detention in a "suicide watch," and that Moran's counsel was sufficiently concerned about Moran's mental stability that counsel asked two psychiatrists to examine Moran to determine his competence to stand trial.

Having been put on notice, in this fashion, about Moran's mental instability, the court should have conducted a *Faretta* canvass in a manner designed to determine whether Moran's decision to change his plea to guilty and waive the assistance of counsel was a free and responsible one and not the product of mental instability. This requirement was not met. Rather, the judge does not appear to have deviated in any manner from a typical course of questioning designed solely to determine whether Moran understood his rights.

Particular vigilance was also required because Mr. Moran was facing a death sentence. A tendered constitutional waiver *always* demands the "utmost solicitude of which courts are capable in canvassing the matter with the accused," *Boykin*, 395 U.S. at 243–44, 89 S.Ct. at 1712. Even more is required in a capital case. There is a "qualitative difference between death and any other permissible form of punishment ... [and there is therefore] a corresponding difference in the need for reliability" in the procedures that result in a sentence of death. *Zant v. Stephens*, 462 U.S. 862, 884–885, 103 S.Ct. 2733, 2746–47, 77 L.Ed.2d 235 (1983).

Under such circumstances, the court's perfunctory sequence of questions requiring only yes-and-no answers, swiftly administered, was inadequate. The entire canvass, including those portions devoted to waiver of counsel and guilty pleas on each of the various counts charged, consisted of about 100 questions posed by the court to the defendant. Nearly all of these questions could be answered by little more than a yes-or-no, and, indeed, all but two could be answered in a single word. Moran's answers form a monotonous litany of yeses, noes, and uh-huhs. Occasionally, the court was required to admonish Mr. Moran that he could not just nod.

The few occasions when Mr. Moran deviated from his monosyllabic responses only provide reason for skepticism about whether Moran's decision to change his plea to guilty and waive his right to counsel were the product of a rational mind. Asked to state the reasons why he wanted to represent himself, Mr. Moran responded:

> THE DEFENDANT: Because we don't—the Public Defenders and myself don't agree on the way they should defend me.
> THE COURT: Well, how do you believe you should be defended?
> THE DEFENDANT: I don't want them to present any mitigating evidence. I don't want this presented, and they have to—they feel that they have to.
> THE COURT: In other words, you do not want to have any—put up any defense, in effect, is that what you're saying?

RT 11/28/84 at 11. By the judge's own reckoning this exchange strongly suggests Moran was motivated to plead guilty and waive counsel solely by a desire to commit suicide by judicial fiat. The court should have engaged in a more extensive and probing investigation but it did not.

Further along in the plea canvass, Mr. Moran again deviated from his litany of single-word responses. This, again, should have alerted a properly vigilant trial court to probe more deeply. Asked whether he murdered his wife "deliberately, with premeditation and malice aforethought," the defendant interrupted:

> THE DEFENDANT: Not really.
> THE COURT: —as I've explained to you?
> THE DEFENDANT: No, I didn't do it—I mean, I wasn't looking to kill her, but she ended up dead.

ing of Moran to be inadequate to quiet doubts about Moran's competence. On the other hand, it finds the same sequence of questions to be adequate to determine that Moran's waivers were knowing, intelligent, and voluntary, an inquiry which requires competence *plus* a free and rational choice. The trial court was required to "indulge every reasonable presumption against waiver." *Brewer*, 430 U.S. at 404, 97 S.Ct. at 1242. If the *Faretta* canvass was inadequate to establish *competence*, how can it have been adequate to establish waiver?

I would find that the *Faretta* canvass, by itself, is inadequate to establish that Moran's waiver of constitutional rights was knowing, intelligent, and voluntary.

### C. Totality of the Circumstances.

Because the *Faretta* canvass was inadequate, we must review the rest of the record to determine whether, given the totality of the circumstances, this case represents one of those rare instances in which a waiver of constitutional rights should be affirmed despite an inadequate canvass. *Balough*, 820 F.2d at 1488–90. The critical additional evidence on the record relevant to our totality of the circumstances inquiry was presented at Moran's Nevada state court post-conviction hearing. The majority does not examine this evidence, other than to note that the post-conviction Nevada state court concluded

> THE COURT: Well, you're charged that you did, with malice aforethought, shoot at and into the body of Linda K. Vandervoort with a deadly weapon, a firearm.
> Did you do that?
> THE DEFENDANT: Yes.
> THE COURT: And did you do so deliberately and with premeditation?
> THE DEFENDANT: No.
> THE COURT: Did you think about it before you did it?
> THE DEFENDANT: Not really.
> THE COURT: Did you do it deliberately?
> THE DEFENDANT: I don't know. I mean, I don't know what you mean by deliberately. I mean, I pulled the trigger on purpose, but I didn't plan on doing it; you know what I mean?
> THE COURT: Well, I've previously explained to you what is meant by deliberation and premeditation. Deliberate means that you arrived at or determined as a result of careful thought and weighing the consideration for and against the proposed action.

that Moran knowingly and voluntarily waived his rights. But because our review of the state's determination of voluntariness is de novo, this state court finding should not influence our own determination of this issue.

Far from overcoming the presumption against waiver, the state court post-conviction hearing provided evidence that Moran's decision was *not* knowing, intelligent, and voluntary. The relevant post-conviction hearing evidence consisted of Moran's testimony and that of one of the psychiatrists who had examined him for competence before he waived counsel and pleaded guilty. Moran supplemented this testimony with medical records indicating the medications he was taking at the time he changed his plea to guilty and waived counsel, and with evidence as to the psychological effects of that medication. The state presented no evidence at the post-conviction hearing.

The evidence presented by Moran raised new doubts about Moran's guilty plea and waiver of counsel in two respects. First, it provided support for the theory that Moran's plea was, indeed, affected by the drugs he was given. This evidence strongly suggested that the medications Moran was taking when he entered his guilty plea and waived counsel affected his thought processes sufficiently to call into question the voluntariness of his decision.[8]

> Did you do that?
> THE DEFENDANT: Yes.
> *Id.* at 30–32. From this exchange, it almost looks as though the trial judge is putting words into Moran's mouth.
> Finally, Moran deviated from his usual rote answers to inform the court that he was taking state-prescribed drugs. This, too, raises a host of questions about whether Moran's waivers were knowing, voluntary, and intelligent.

8. As noted by the majority, Moran was taking four different prescription drugs to control his cocaine-induced seizures. Moran testified that these drugs took away his will to live. His claim was corroborated by the medical evidence he presented that the drugs in question can have powerful psychological effects which include confusion, light-headedness, hallucinations, disorientation, memory loss, drowsiness, and mental depression.

After reviewing this evidence, the post-conviction court found that "the defendant did *not*

Second, the evidence at the post conviction hearing supported Moran's contention that he was demoralized by possibly erroneous information provided by counsel about the lack of possible defenses to first degree murder. Moran testified that his lawyers had demoralized him by telling him that he had no such defense:

Well, basically I asked [my lawyers] what, you know, what we were going to do. And I'm not sure if it was Mr. Gubler or Mr. Miller says that they weren't going to worry about the defense because there really was none, and they were just going to work on the guilt phase of the trial or the penalty phase of the proceedings.

. . . . .

... I asked them if I could plead like diminished capacity or something, and they said, well, you can't do that in Nevada.

RT 4/20/88 at 158–159. The post-conviction court adopted Moran's version of events, finding that: "Defendant was informed by his Deputy Public Defender that he had no defense to the crimes and that they suggested he concern himself with the penalty phase of the murder cases." Order at 3.[9]

The testimony of Doctor William O'Gorman, one of two psychiatrists who examined Moran to determine his competence to stand trial, suggests that Moran's lawyers were wrong. Moran may well have had a legitimate defense based on his inability to form the specific intent requisite to a conviction of first degree murder. Doctor O'Gorman testified that "at the actual time [of the murders], if [Moran] were under the influence of large amounts of cocaine, particularly free-base or crack, I don't think he could form intent at that moment." RT 4/20/88 at 15. Moran's

present evidence as to the effect on him of any drugs he may have ingested prior to the entry of the plea. The defendant merely testified that he was depressed and desired the death penalty" Order at 5 (emphasis added). This finding is patently inaccurate. Moran's *testimony* about the effect the drugs had on him clearly qualifies as *evidence* about the effect of the drugs, as does the natural inference to be drawn from the medical descriptions of the effects that the drugs have on patients. As the court's finding is not supported by the record, we need not accord it a presumption of correctness under § 2254(d).

The Nevada Supreme Court, reviewing the post-conviction hearing, also stated that "Moran presented no medical evidence ... which *necessarily* established that the medication influenced him to such an extent that he was *unable* to understand the meaning and consequences of his plea." Order Dismissing Appeal at 3–4 (emphasis added). This statement places far too high a burden on Moran. First, for any defendant three-and-a-half years after the fact to establish that medication "necessarily" influenced him in any particular way would be virtually impossible. Second, Moran's ability to understand the meaning and consequences of his choice goes to whether or not he was *competent* to plead guilty. As discussed above, a knowing, intelligent and voluntary waiver of constitutional rights requires more than mere competence. The waiver also must be "the product of a free and rational choice." *Alford*, 400 U.S. at 31, 91 S.Ct. at 164. The Nevada Supreme Court's finding does not address whether the medications affected Moran's ability to make such a choice.

9. The post-conviction court and the Nevada Supreme Court were not in agreement about this factual determination, but for the reasons that

follow we should give greater credence to the post-conviction court's findings on this issue.

The Nevada Supreme Court, without referring to the post-conviction court findings, concluded "a thorough reading of the record reveals that Moran's counsel did discuss potential defenses with him." Order Dismissing Appeal at 2 (citing Moran's statements during the *Faretta* canvass and the fact that the attorneys advised him against changing his plea to guilty).

Section 2254(d) requires us to presume correct *all* of the findings of the various tribunals in this case to the extent that the findings do not contradict one another. *Sumner v. Mata*, 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981) ("*Sumner I*"). But where the factual findings of the various state tribunals contradict one another, we must inquire further to determine which, if either, of the findings is entitled to the presumption of correctness. *See Neuschafer v. McKay*, 807 F.2d 839 (9th Cir.1987) (evidentiary hearing warranted to resolve inconsistent findings by the trial court and state supreme court).

In this case, we should give greater credence to the post-conviction judge's credibility findings. For one thing, the same judge presided over both the initial entry of pleas and the post-conviction hearing so that his judgment of credibility should be given special weight. Significantly, the Nevada Supreme Court did not explain why it did not adopt the post-conviction court's finding that Moran's counsel informed Moran that he had no defense. Nor did the Nevada court even refer to that finding. Finally, the Nevada Supreme Court was wrong when it concluded that Moran made inconsistent statements. It was not inconsistent for Moran to once say that he discussed his defenses with his attorneys, and to later say that his discussion with the attorneys consisted of his attorneys' statements that he had no defense.

attorney's apparently never bothered to ask Doctor O'Gorman his opinion on this matter.

We do not have enough information at this juncture to evaluate the viability of such a defense. For this reason, Moran's counsel's statement, that Moran had no defense, would not be enough, by itself, to demonstrate that Moran's guilty plea and waiver of counsel were not knowing, intelligent and voluntary. Still, the demoralizing effect of the lawyer's possibly erroneous statement is likely to have combined with Moran's already depressed mental state and with the mind-numbing drugs to subvert Moran's choice not to fight for his life.

In sum, the *Faretta* canvass was inadequate in this case because Moran's mental state was insufficiently probed. Furthermore, this is not one of the rare cases wherein there is adequate evidence in the record, outside of the canvass, to demonstrate that the waiver of counsel and guilty plea were knowingly, intelligently, and voluntarily tendered. Rather, an examination of the record in its totality only magnifies the impression that Moran's waiver of counsel and guilty plea were not the product of a free and rational choice.

Because of this, and because of the *Pate* violation, I would remand to the district court for an evidentiary hearing to inquire about the effect of the drugs, what Moran's lawyers told him, and whether Moran's waiver and plea were knowing, intelligent and voluntary in light of what the district court finds.