107 F.3d 878
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Ebrahim SADEGHY, Petitioner-Appellant,
v.
Peggy KERNAN, Respondent-Appellee.
 No. 96-16073.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 10, 1997.
Decided Feb. 27, 1997.
 
 Before: BRUNETTI, FERNANDEZ, and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Ebrahim Sadeghy appeals the district court's dismissal of his petition for Writ of Habeas Corpus. Appellant was convicted of first degree murder, the unauthorized practice of medicine, and two counts of perjury. Appellant alleges that he was deprived of his fifth and fourteenth amendment right to due process because his conviction was based upon insufficient evidence, he received ineffective assistance of counsel, the trial judge gave an improper jury charge, and the trial judge improperly admitted inflammatory evidence. We affirm the district court's dismissal of Appellant's petition.
 
 I.
 
 3
 Appellant claims that there was insufficient evidence to support the jury's finding that he proximately caused the death of Myrtle Reid. Appellant argues that insufficient evidence was presented on the precise cause of Ms. Reid's death, which was unknown because no autopsy was performed.
 
 
 4
 Under California law, a defendant's act is a proximate cause of death if it constituted a substantial factor contributing to the victim's death. People v. Caldwell, 36 Cal.3d 210, 220 (1984). In order to prove proximate cause, the prosecution need only prove that the defendant's act accelerated the time of death. People v. Phillips, 64 Cal.2d 574, 579 (1966). Therefore, we must determine whether there was sufficient evidence presented at trial for a reasonable jury to find beyond a reasonable doubt that Sadeghy encouraged Ms. Reid to cease taking her medications and that the cessation of those medications accelerated her death. Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 5
 The following is a list of the evidence presented at trial supporting the jury's conclusion that Sadeghy's actions accelerated Ms. Reid's death: 1) testimony by Ms. Reid's doctors that it was essential for her to continue her medication and be monitored regularly by a physician; 2) testimony by Ms. Reid's neighbors that she stopped taking medication on Appellant's advice; 3) testimony by Ms. Reid's neighbors and friends that Ms. Reid told them that she ceased her medication on Appellant's advice in Appellant's presence and that Appellant did not object to those statements; 4) testimony by Dr. Rodenbaugh, Ms. Reid's personal physician, that the various symptoms witnessed in Ms. Reid were consistent with the cessation of her medication; 5) testimony that Appellant asked several people to lie about his medical treatment of Ms. Reid after her death; and finally 6) the fact that Appellant stood to benefit financially from Ms. Reid's death as the sole beneficiary of her will.
 
 
 6
 Evaluating all of the evidence presented at trial, a rational trier of fact could have found that Appellant proximately caused Ms. Reid's death. Appellant's challenge to the sufficiency of the evidence is denied.
 
 II.
 
 7
 Appellant alleges that he was deprived of the effective assistance of counsel because his attorney failed to present expert medical testimony which would have demonstrated a lack of reasonable medical certainty that the cessation of Ms. Reid's medications was the proximate cause of her death. We review a claim of ineffective assistance of counsel de novo. Moran v. Godinez, 57 F.3d 690, 699 (9th Cir.1994), cert. denied, 116 S.Ct. 479 (1995), and we affirm.
 
 
 8
 To prove that Mr. Woodman's representation was ineffective, Appellant must prove 1) that counsel's performance fell below "prevailing professional norms," and 2) that counsel's errors prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 690-92 (1984). Strickland imposes a "highly demanding" standard upon a petitioner to prove "gross incompetence." Kimmelman v. Morrison, 477 U.S. 365, 382 (1986).
 
 
 9
 A tactical decision by counsel with which the defendant later disagrees is not a basis for a claim of ineffective assistance of counsel. Guam v. Santos, 741 F.2d 1167, 1169 (9th Cir.1984). We assess the decision not to call a witness in light of the trial record and any explanations offered by counsel. Morris v. California, 966 F.2d 448, 456 (9th Cir.1992). Where it is possible that the failure to present evidence was a "difficult but thoughtful tactical decision," we presume that counsel's conduct was within the range of competency. Harris v. Pulley, 885 F.2d 1354, 1368 (9th Cir.1988).
 
 
 10
 Appellant's trial counsel, Mr. Woodman, interviewed and intended to call Dr. Alan Rider, a doctor specializing in internal medicine and cardiovascular diseases, as an expert medical witness. Dr. Rider had agreed to testify on Appellant's behalf at trial on one week's prior notice, but later refused to do so.
 
 
 11
 Mr. Woodman died one week before an evidentiary hearing was held on the issue of ineffective assistance of counsel. A signed declaration by Mr. Woodman, admitted into evidence on the parties' stipulation, stated that Mr. Woodman consulted with Dr. Rider several months before trial on whether the cessation of Ms. Reid's medications caused or accelerated her death. Mr. Woodman stated that "[b]ecause [Dr. Rider] gave me no reason to think he would be unavailable, and because I was afraid he might take offense if we subpoenaed him to testify, I did not see a need to serve him with a subpoena. As a trial tactic, for greatest impact, I wanted to leave final scheduling of Dr. Rider so he would appear towards the very end of the trial."
 
 
 12
 After realizing that Dr. Rider was unable to testify, Mr. Woodman discussed the option of obtaining a continuance with Appellant, who was acting as co-counsel. According to Mr. Woodman's declaration, both he and Appellant were aware that several jurors and the judge had vacation plans. At the evidentiary hearing, Mr. Woodman's son testified that Mr. Woodman felt it would be risky to offend the jurors and decided to rely on the existing medical testimony. The son's testimony comports with Mr. Woodman's declaration which describes Appellant's similar concerns: "Mr. Sadeghy indicated to me that he didn't want to alienate the judge and jurors. Based upon Mr. Sadeghy's appearance of consent, as a trial tactic, I decided not to mention the matter at all."
 
 
 13
 The record reflects that these concerns were not unfounded. In his closing argument, Mr. Woodman apologized to the jury for any delay to which he may have contributed. Earlier in the trial, Appellant, acting as co-counsel, had conducted lengthy, disjointed cross-examinations that visibly annoyed the jury and caused the judge to admonish Appellant. Not obtaining another expert or choosing to delay the trial under those circumstances was a tactical decision by counsel, which may not form the basis of a claim of ineffective assistance of counsel. Guam v. Santos, 741 F.2d at 1169. Finally, Mr. Woodman's son testified that Mr. Woodman believed he could defeat the prosecution's case on the issue of proximate cause by relying on the state of the evidence.
 
 
 14
 Even if Appellant could prove that his counsel's representation fell below the prevailing professional norms, Appellant failed to prove that he was prejudiced by Mr. Woodman's representation. Resolving the issue whether Appellant was prejudiced by Mr. Woodman's failure to call Dr. Rider as a witness depends upon what Dr. Rider's testimony would have been had he testified. Although Dr. Rider testified at the evidentiary hearing that he could not say with a reasonable medical certainty whether the cessation of medications hastened Mrs. Reid's death, his testimony was somewhat equivocal. Dr. Rider opined that Mrs. Reid's treating physician, Dr. Rodenbaugh, was in the best position to give an opinion about the cause of her death and that Mrs. Reid's cessation of medications without monitoring by a physician could have put her at risk of developing a life threatening condition. Assuming that Dr. Rider would have testified similarly at trial, his testimony can hardly be considered exculpatory for Appellant. Rather, Dr. Rider's testimony merely confirmed the testimony of other expert medical witnesses who testified at trial on behalf of the prosecution. Although it is impossible to determine exactly what caused Ms. Reid's death, ceasing her medications may have accelerated her death.
 
 
 15
 Prejudice is not proven by demonstrating "some conceivable effect on the outcome of the proceeding." Strickland, 466 U.S. at 693. Rather, Appellant bears the burden of showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694. Appellant failed to prove any probability that but for Mr. Woodman's errors, the result of the proceeding would have been different. Rather, the evidence indicates that Dr. Rider's testimony would not have done anything to detract from the mountain of evidence indicating that the cessation of medications was a proximate cause of Ms. Reid's death.
 
 III.
 
 16
 Appellant argues that an erroneous jury instruction diluted the standard of proof, allowing the jury to convict him on a finding of less than "beyond a reasonable doubt." We disagree and affirm the district court's finding that any error was harmless.
 
 
 17
 Appellant contends that the trial judge lowered the standard of proof by instructing the jury that it could convict Appellant of murder if it found that:
 
 
 18
 "[Appellant's] act ... is a proximate cause of ... death ... such conduct can support a charge of murder even though ... it is probable that the act only hastened the death of the dying person and that he or she would have died soon thereafter from another cause or other causes."
 
 
 19
 This instruction refers to the fact that the jury could convict Appellant of murder even if Appellant's actions only hastened Ms. Reid's death and were a concurrent cause thereof. The instruction assumes that proximate cause was already established beyond a reasonable doubt.
 
 
 20
 Appellant concedes that the subject of proximate cause was introduced with the proviso that it had to be established by proof beyond a reasonable doubt. In addition to a specific reasonable doubt instruction on the issue of proximate cause, the district court gave at least four other reasonable doubt instructions, and both parties focused upon a finding of beyond a reasonable doubt in their closing arguments. Even if we assume that the instruction was error, the court must ask whether it was cured "in the context of the instructions as a whole and the trial record." Estelle v. McGuire, 502 U.S. 62, 72 (1991). Weighing the use of the word "probable" in the challenged instruction against the otherwise pervasive issue of "beyond a reasonable doubt" in the jury instructions, there is no reasonable likelihood that the jury would have misunderstood the standard of proof and any error was harmless.
 
 IV.
 
 21
 At the beginning of the trial, Appellant was charged with the fraudulent use of a medical diploma under California Business and Professions Code section 582. To support that charge, the prosecution introduced evidence of forgery, bribery, theft and adultery. At the end of the prosecution's case, the trial court dismissed the charge based on an insufficiency of the evidence. The trial court struck the evidence and admonished the jury not to consider the evidence for any purpose. We must assume that the jury followed the court's limiting instruction. United States v. Brady, 579 F.2d 1121, 1127 (9th Cir.1978).
 
 
 22
 Appellant argues that the evidence so infected the trial that the jury was unable to disregard the evidence. He argues that the evidence was so prejudicial that it violated his right to due process. See McKinney v. Rees, 993 F.2d 1378 (9th Cir.1993). The admission of evidence will violate due process only if it raises no permissible inference for the jury to draw and is of such a quality as necessarily prevents a fair trial. Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir.1991). Character evidence is the type of evidence from which no permissible inference may be drawn. McKinney, 993 F.2d at 1384. In determining whether the admission of such evidence necessarily prevented a fair trial, the probative and prejudicial force of inadmissible evidence must be compared with that of the admissible evidence supporting the verdict. United States v. Johnson, 618 F.2d 60, 62 (9th Cir.1980).
 
 
 23
 The admission of the bad character evidence was harmless because it was cumulative. The jury heard other admissible evidence that Appellant lied to many people including Ms. Reid, her neighbors, his several wives, and other persons. The jury also heard admissible testimony about Appellant's scheming and ill treatment of Ms. Reid. Appellant argues that it is far more damaging for a jury to learn that he was guilty of forgery, bribery and theft, than it was for the jury to hear that he was a liar. It cannot be said that the jury's hypothetical consideration of the inadmissible evidence necessarily prevented Appellant from receiving a fair trial.
 
 CONCLUSION
 
 24
 We AFFIRM the district court's denial of Appellant's Petition for Writ of Habeas Corpus.
 
 
 25
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3